WILLIAM T. SHANKLE (WIDOWER), AND WILLIAM K. SHANKLE, ADMINISTRATOR OF THE ESTATE OF ELI C. SHANKLE, DECEASED, PETITIONERS v. MISSIE G. SHANKLE (WIDOW), BRAXTON SHANKLE (DIVORCED), ALBERT SHANKLE AND WIFE, MRS. ALBERT SHANKLE, E. HERBERT SHANKLE, JR., AND WIFE, MRS. E. HERBERT SHANKLE, JR., NANNIE SHANKLE WILLIAMS AND HUSBAND, JOHN DOCK WILLIAMS, BOBBY SHANKLE (SINGLE), AND NEWNAN HOWARD SHANKLE AND WIFE, MRS. NEWNAN HOWARD SHANKLE, RESPONDENTS

No. 73

(Filed 6 April 1976)

1. Trial § 3— motion for continuance — burden of proof

    Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. G.S. 1A-1, Rule 40(b).

Shankle v. Shankle

**2. Trial § 3— motion for continuance — discretion of court**

   A motion for a continuance is addressed to the sound discretion of the trial judge, who should determine it as the rights of the parties require under the circumstances; however, this discretion is not unlimited and must not be exercised absolutely, arbitrarily or capriciously, but only in accordance with fixed legal principles.

**3. Trial § 3— motion. for continuance — hearing of evidence**

   Before ruling on a motion to continue, the judge should hear the evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice.

**4. Trial § 3— motion for continuance — withdrawal of attorney**

   The decision whether to grant a continuance because the moving party's attorney has withdrawn from the case on the day of trial rests in the trial judge's discretion, to be exercised after he has determined from the facts and circumstances of the particular case whether immediate trial or continuance will best serve the ends of justice.

**5. Trial § 3— withdrawal of attorney — denial of continuance**

   Respondents were *prima facie* entitled to a continuance, and the trial judge erred in denying their motion to continue without exploring the matter further, where one respondent presented an affidavit and a statement in open court that respondents had retained and paid an attorney to represent them in the trial, that after conferring with the trial judge who "made strong remarks about the respondents," the attorney withdrew from the case and departed court on the day of the trial, and that respondents "had no way of knowing this would happen."

**6. Apppeal and Error § 62— new trial — ends of justice**

   The ends of justice require that this cause be remanded for a new trial where it is patent that neither side was prepared for the first trial, the evidence was not developed, and the issues which will determine the merits of the controversy were never defined, and where the evidence fomented questions it did not answer and suggested issues not raised by the pleadings.

**7. Jury § 1; Rules of Civil Procedure § 38— demand for jury trial — notations in clerk's transfer order**

   Although the parties made no written demand for a jury trial in the manner prescribed by G.S. 1A-1, Rule 38, the purpose of Rule 38 was accomplished by an oral request of all the parties for a jury trial and a notation of such request by the clerk in her order transferring the cause (begun as a special proceeding) to the civil issue docket of the superior court.

CERTIORARI to review the decision of the Court of Appeals, reported in 23 N.C. App. 692, 209 S.E. 2d 533 (1974), which vacated a judgment entered by *Seay, J.,* at the 25 February 1974 Session of RICHMOND Superior Court and remanded the case

to that court for a new trial, docketed and argued at the Spring Term 1975 as Case No. 96.

This case was begun before the Clerk of the Superior Court on 28 January 1971 as a special proceeding under G.S. 46-22 for the partition by sale of realty located in Richmond County. Petitioners, W. T. Shankle and his son, W. K. Shankle, administrator of the estate of Eli C. Shankle, are respectively the son and grandson of Eli C. Shankle. They allege that the property described in the petition was owned by Eli C. Shankle at the time he died intestate in 1952; that at his death title to the property vested in his two sons, W. T. Shankle and E. H. Shankle, as tenants in common; that E. H. Shankle died intestate in 1969 and his one-half undivided interest devolved upon his wife and six children, the respondents in this action.

Respondents, in their answer filed 23 February 1971, admitted that Eli C. Shankle died intestate in 1952 survived by two sons; that one son, E. H. Shankle, died intestate in 1969 survived by his wife and six children, who are the respondents. They denied, however, that Eli C. Shankle died seized of the property in suit and that petitioner William T. Shankle has any interest in it.

Specifically, respondents alleged: (1) On or about 27 September 1945 Eli C. Shankle conveyed the property to E. H. Shankle in consideration of $2,300.00 paid by E. H. Shankle to W. T. Shankle. (2) This conveyance was subject only to a life estate which Eli C. Shankle retained in a portion of the property. (3) Upon the death of Eli C. Shankle, E. H. Shankle became the sole owner of the property; that he entered into possession of it and continued in exclusive possession until his death intestate in 1969. (4) Respondents, as the heirs of E. H. Shankle, are the sole owners of the property and the court should, therefore, dismiss this proceeding.

In Paragraph Five of respondents' further answer they alleged that Eli C. Shankle executed a memorandum dated 13 March 1945, which evidenced his 1943 conveyance of the property to his son, E. H. Shankle, and that a copy of this memorandum entitled "Exhibit A" is incorporated by reference in Paragraph Five and attached to the answer.

Petitioners moved to strike Paragraph Five of respondents' further answer and defense, and this motion came on for hearing by the clerk on 23 March 1972. Noting that the pleadings

Shankle v. Shankle

raised issues of fact she ordered the entire proceeding transferred to the civil issue docket of the Superior Court "to be tried at the next ensuing Civil Session." In this order the clerk incorporated the following statement: "[A]ll of the parties hereto have requested a jury trial on the issues arising in this proceeding." No written demand for a jury trial, however, was ever made by any party, either in a pleading or in a separate document as prescribed in G.S. 1A-1, Rule 38(b).

In the Superior Court, on 25 September 1972, the proceeding came before Judge McConnell, who allowed petitioners' motion to strike Paragraph Five of respondents' further answer and granted them thirty days in which to amend the pleading. Petitioners were given permission to reply to respondents' amended answer.

In their amended answer respondents again alleged that Eli C. Shankle had conveyed the property described in the petition to E. H. Shankle. This time they incorporated in Paragraph Five an attached exhibit, which they alleged to be a copy of the deed by which "E. C. Shankle" had conveyed the property in suit to E. H. Shankle on 1 February 1945 reserving to himself "a life estate in [his] house, [his] barn and the few acres of land around [his] house."

This exhibit contains the certificate of Evelyn E. Story, a notary public of Richmond County, that on 1 February 1945 E. C. Shankle acknowledged the execution of the "annexed and foregoing instrument" before her. It also contains two certificates signed on 22 November 1971 by Evelyn E. Story as a deputy clerk of the Superior Court of Guilford County. The first states that the exhibit is "a true and correct copy of the deed signed, sealed, and delivered by E. C. Shankle to E. H. Shankle"; the second, that E. C. Shankle appeared before her on 1 February 1945 and acknowledged the due execution of the instrument.

The exhibit further shows that it was recorded in the office of the Register of Deeds of Guilford County on 24 November 1971 and that a copy was certified to Richmond County, where it was recorded on 2 December 1971.

On 10 November 1972 petitioners moved to strike that portion of respondents' amended answer which referred to a copy of the alleged deed from Eli C. Shankle to E. H. Shankle. Petitioners also filed a motion that respondents be required to pro-

duce the original deed or to account for its absence. In this motion petitioners alleged that the copy of the deed which respondents attached to their amended answer was not a facsimile of a validly recorded deed; that the original deed was never delivered and respondents could not produce it because they never lawfully possessed it and it had been destroyed by the maker. Judge McConnell granted this latter motion on 12 March 1973. A stipulation in the record states that respondents appealed from this order and that the appeal was later dismissed upon petitioners' motion.

In a reply to respondents' amended answer, filed 23 March 1973, petitioners alleged:

Sometime in 1945 Eli C. Shankle agreed with E. H. Shankle that he would transfer the property to E. H. Shankle provided E. H. Shankle would (1) pay his brother, W. T. Shankle, a certain sum of money, and (2) support and care for his father, Eli C. Shankle, for the rest of his life. Pursuant to the agreement Eli C. Shankle prepared a deed conveying the property to E. H. Shankle, and E. H. Shankle paid his brother the money. However, "in order to protect his interest under the agreement," Eli C. Shankle never delivered the deed to E. H. Shankle but kept it in his possession to insure the performance by E. H. Shankle of his obligation to care for him. Thereafter E. H. Shankle failed to support and care for his father. In consequence, Eli C. Shankle burned the deed in the presence of W. T. Shankle and told him he was to share the property with his brother, E. H. Shankle. Several times thereafter W. T. Shankle tried to return to his brother the money he had given him in 1945, but E. H. Shankle would not accept it. The copy of the deed attached to respondents' answer was a xerox copy which one of the respondents found among Eli C. Shankle's effects in 1972, twenty years after his death. However, since the original deed was never delivered, Eli C. Shankle never conveyed the property.

This case was set for trial at the July 1973 Session. However, Judge Armstrong continued the case on the ground that the case "might be" on appeal from Judge McConnell's order of 12 March 1973. He also entered an order directing that the case not be recalendared for trial until the appeal had been determined and "pretrial orders filed in accordance with the rules of court."

Although no pretrial orders were ever filed and no pretrial had been held, the case was recalendared as the first case for trial at the 11 February 1974 Session. When the calendar was called upon the convening of court, Judge Seay announced that he had received a written motion from respondent *Braxton Shankle* requesting a continuance of this case but he would deny the motion.

When the case was called for trial, respondent *Newnan Shankle,* on behalf of all the respondents, filed a verified motion to continue the case until the next term. *Inter alia,* this motion, set out in full in the record, asserted that respondents were without counsel through no fault of their own; that their attorney, Mr. Richard Clark of Monroe, to whom they had paid a retainer of $200.00, had left the court "after the judge made strong remarks about respondents"; that Mr. Clark knew the case was set for trial on 11 February 1974 and they had no knowledge he would quit.

Set out in the record, immediately preceding the motion, are findings by the judge that Mr. Clark never made a formal appearance in this action "nor did he make a continuance request on behalf of the respondents."

Immediately after the filing of the motion for continuance, the record shows the following exchange between the court and Mr. Newnan Shankle:

"Court: Do you want to say anything about your motion?

"Mr. Shankle: I think the motion self explains it. On it I feel very strongly we should have counsel; and we have tried very diligently to have counsel. We had no way of knowing what would happen today or we would have obtained another counsel.

"Court: Motion is denied. Respondents excepted.

"The respondents made a motion for a trial by jury, which motion was denied, and respondents excepted.

"After some discussion of the court, Mr. Newnan Shankle stated, I again repeat. I want to have my attorney.

"Court: What you want and what you get seem to be at a variance. So you go ahead."

Mr. Shankle then called the court's attention to Judge Armstrong's order and stated that he "would like to make a verbal motion" for a pretrial. "The court refused the motion to which respondents except." The court then proceeded with the trial.

Pertinent evidence for petitioners consisted largely of the testimony of petitioner W. T. Shankle, then 77 years of age and hard of hearing. On direct examination he identified a map of the land described in the petition, asserted that he owned one-half of the land, and that the fairest way to divide it between himself and respondents was by sale and division of the proceeds.

At least four of the respondents individually undertook to cross examine W. T. Shankle and thereby to elicit testimony which would substantiate their allegations. The result was confusion worse confounded. Although anxious to give his version of the events which engendered the lawsuit, Mr. Shankle was never able to articulate family history to anyone's satisfaction. Frequent questions interposed by the court for the purpose of clarification served only to divert him from one thought, incompletely expressed, to another which was similarly interrupted. The result was further obfuscation, judicial frustration, and mounting tensions all around. At one point, Judge Seay directed counsel for petitioners to take both his clients out to see what he could do about Mr. W. T. Shankle's testimony. When this occurred, the record shows the following:

"To the manner of questioning by the court and to the court's suggestion as aforesaid, the respondents except.

"A recess was then taken and the witness and his attorney retired for a conference. Thereafterwards, the court resumed hearing."

When considered in its entirety, it would seem that W. T. Shankle's testimony is susceptible of the following interpretation:

On or about 22 September 1943 Eli Shankle and his two sons, W. T. and E. H. Shankle, entered into "a three-way agreement" with reference to the lands of Eli Shankle. In consideration of (1) E. H. Shankle's assumption of responsibility for the care and maintenance of Eli Shankle during the remainder of his life and (2) his payment of a certain sum ($1,600-$1,700) to W. T. Shankle, the parties agreed that title to the Eli Shankle

farm should devolve upon E. H. Shankle. "He was supposed to look after [his] daddy."

Eli Shankle and his sons met at the Bank of Mt. Gilead, where he divided between them some money from the sale of timber from his farm. "Claiming" that W. T. Shankle owed him $1,100.00, Eli Shankle "fixed the $1,100.00 over" to E. H. Shankle, who then gave it to W. T. Shankle along with his personal check for $550.00, dated 23 September 1943. Subject to "the provision" that E. H. Shankle would take care of Eli Shankle, W. T. Shankle accepted this money as his share in the estate of his father.

At the time W. T. Shankle accepted the money he saw Eli Shankle sign a deed to E. H. Shankle, "the original deed to the estate." Eli Shankle, however, kept the deed; he did not deliver it to E. H. Shankle. This deed was drawn by Arnold Bruton, the banker, and W. T. Shankle did not sign the instrument.

Thereafter E. H. Shankle failed to look after his father. W. T. Shankle "went down there many a time and he [Eli] didn't have a mouthful of rations in the house. . . . When he got sick . . . the rest of them had went off and worked," and W. T. Shankle often went down there and cooked meals for him.

With reference to the whereabouts of the deed which Eli Shankle signed on 23 September 1943, W. T. Shankle testified as follows:

"I saw it burn. My daddy burned it in the fireplace. That is where the deed went to, the original deed, he burned it up. He burned it up about '46 or '47. My daddy kept the deed because I have seen that deed many a time, and I saw it burn. . . .

"He said, 'They haven't come up with no agreement at all with me,' says, 'I worked and slaved, I got where I ain't able to work,' and I went down there a many a time—nobody was there but me and him. The original deed was burned, and I know it. You got copies, but the original deed has really been burned up. You will never find it nowhere."

W. T. Shankle's testimony also tended to show the following:

A State road running east and west divides the Eli Shankle farm into two tracts. The one on the north side of the road contains 56 acres and the homeplace of Eli Shankle in which his

two sons were reared. The tract on the south side contains 159 acres and the residence of the late E. H. Shankle. W. T. Shankle left his father's farm in the fall of 1923 when he was 27 years old. Thereafter he came back on weekends to help, but he never came back to farm the land. He bought himself a farm in Anson County, where his occupation was that of a salesman. Since 1 October 1945 he has never paid any taxes on the Eli Shankle farm.

At the conclusion of the testimony of W. T. Shankle the record states that "all respondents present were given an opportunity to testify or present evidence, and much time was taken up by the respondents in offering much evidence that was irrelevant and incompetent. Only the following [stated in brief summary below] is deemed material for a determination of the issues raised herein."

Albert Shankle, the son of E. H. Shankle and a grandson of Eli Shankle, was 19 years old in 1943. He testified that he was in the Bank of Mt. Gilead in September 1943 and saw his father pay his uncle, W. T. Shankle, $2,300.00 in cash and checks. He also saw Eli Shankle give E. H. Shankle a paper of some kind, which E. H. Shankle put in his pocket. Floyd A. Carriker, assistant cashier of the Bank of Mt. Gilead, identified the signature of E. H. Shankle on a check to E. C. Shankle for $80.00 on which "it is stated it is for a deed to the X-way Farm, deed delivered on 2/1/45." The court admitted this check in evidence with the comment, "You see, it's got Paid punched on it."

Thereafter respondents called two witnesses to whom they directed questions apparently designed to establish title in the respondents by adverse possession commencing 1 February 1945. Petitioners' objections to each of these questions were sustained.

On 26 February 1974, Judge Seay entered judgment in which the pertinent findings are summarized as follows (enumerations ours):

1. The parties waived their right to a jury trial by failing to file a written request therefor as required by G.S. 1A-1, Rule 38(b).

2. Eli C. Shankle died intestate on 5 January 1952 seized in fee of the lands described in the petition and survived by

two sons, E. H. and W. T. Shankle, his sole heirs at law, to whom his lands descended.

3. At one time a deed was prepared naming Eli C. Shankle as grantor, but this deed was destroyed and never delivered. Respondents, although directed by the court to do so, have not produced that certain deed dated 1 February 1945, which is referred to in their amended answer.

4. There is no feasible way of equitably dividing the property in kind.

Upon the foregoing findings of fact Judge Seay appointed a commissioner to sell the land in the manner provided by law for judicial sales and to divide the net proceeds among the tenants in common in proportion to their interest as specified in the judgment.

From the foregoing judgment respondents appealed to the Court of Appeals.

The decision of the Court of Appeals, set out in a terse opinion, was that "[i]n view of the particular background of this case, which stated as a special proceeding before the Clerk, where all parties requested a jury trial almost two years prior to the time the case was called for trial, and where these requests were set out in the Clerk's written order transferring the case to the civil issue docket," the ends of justice require that the judgment be vacated and the case remanded for trial by jury. Upon petitioners' application we allowed certiorari.

*Ben D. Haines for petitioner appellants.*

*Jones & Deane for respondent appellees.*

SHARP, Chief Justice.

Respondents' first assignment of error is that the trial court forced respondents into trial without the privilege of counsel by denying their motion for a continuance.

[1, 2] Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. G.S. 1A-1, Rule 40(b) provides: "No continuance shall be granted except upon application to the court. A continuance may be granted only for good cause shown and upon such terms and conditions as justice may require." Considering the myriad circumstances which might be urged as grounds for a continu-

ance the Rule wisely makes no attempt to enumerate them but leaves it to the judge to determine, in each case, whether "good cause" for a continuance has been shown. Thus, a motion to continue is addressed to the sound discretion of the trial judge, who should determine it "as the rights of the parties require under the circumstances." 7 Strong's N. C. Index 2d *Trial* § 3 (1968). However, "this discretion is not unlimited, and must not be exercised absolutely, arbitrarily, or capriciously, but only in accordance with fixed legal principles. . . . " 17 C.J.S. *Continuances* § 5 (1963).

[3] Further, before ruling on a motion to continue the judge should hear the evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice. The rule has been well stated as follows:

"In passing on the motion the trial court must pass on the grounds urged in support of it, and also on the question whether the moving party has acted with diligence and in good faith. In reaching its conclusion the court should consider all the facts in evidence, and not act on its own mental impression or facts outside the record, although . . . it may take into consideration facts within its judicial knowledge. . . . The motion should be granted where nothing in the record controverts a sufficient showing made by the moving party, but since motions for continuance are generally addressed to the sound discretion of the trial court . . . a denial of the motion is not an abuse of discretion where the evidence introduced on the motion for a continuance is conflicting or insufficient. . . . The chief consideration to be weighed in passing upon the application is whether the grant or denial of a continuance will be in furtherance of substantial justice." *Id.* § 97.

In this case nothing in the record contradicts respondent Newnan Shankle's affidavit, and his statement in open court, that respondents had retained and paid Mr. Richard Clark, Attorney, to represent them at the trial on 11 February 1974; that, after conferring with the trial judge who "made strong remarks about the respondents," Mr. Clark withdrew from the case and departed the court on the day of the trial; that respondents "had no way of knowing this would happen to-day or they would have obtained other counsel"; that they were faced with circumstances beyond their control and without an attorney they could not have a fair trial. The court's findings that Mr. Clark made no motion for a continuance or "filed any

legal documents" in behalf of respondents does not contradict Newnan Shankle's affidavit and statement.

In *Abernethy v. Trust Co.*, 202 N.C. 46, 161 S.E. 705 (1932), during term, and prior to the call of the action for trial, the plaintiff's counsel moved that the case be continued because of her illness. The motion was supported by the plaintiff's affidavit and the certificates of her physician. Notwithstanding, the court found that the plaintiff's condition did not entitle her to a continuance and denied the motion. From the judgment entered upon an adverse verdict the plaintiff appealed to this Court. *Inter alia,* she assigned as error that she had been deprived of her right to be presesnt at her trial and to testify in her own behalf by reason of the denial of her motion for a continuance.

In the course of its serious consideration of this assignment, the Court noted (1) that the judge's finding of fact was contradicted by all the evidence in the record; and (2) that granting or refusing a continuance is in the discretion of the judge; and (3) that for this Court to review the trial judge's exercise of his discretion " 'would require circumstances proving beyond a doubt hardship and injustice.' " Specifically, the Court said: "We think that in the absence of any evidence tending to contradict the affidavit of the plaintiff and the certificates of the physician, the court should have found that plaintiff was ill and for that reason unable to attend court during the May Term, 1931. . . . We do not doubt that in a proper case, this Court has the power, and therefore the duty, to grant a new trial, when it appears that as a result of the refusal by the trial court to allow a motion for continuance, the moving party to the action has been deprived of his right to be present at the trial, or to have witnesses whose testimony is essential to his cause present. In the instant case, the plaintiff is entitled to a new trial for error in the charge. . . . It is therefore not necessary for us to grant a new trial upon the ground that there was prejudicial error in the refusal of the trial court to allow the motion for continuance." *Id.* at 48, 161 S.E. at 706.

[4]   Although in *Abernethy v. Trust Co., supra,* the motion to continue involved the presence of the party plaintiff at her trial, its rationale may be equally applicable to the absence of the party's attorney. In this regard, the general rule is that an attorney's withdrawal on the eve of the trial of a civil case is not *ipso facto* grounds for a continuance. See Annot; "Withdrawal

or discharge of counsel in civil case as a ground for continuance," 48 A.L.R. 2d 1155 (1956) ; 17 C.J.S. *Continuances* § 23 (1963). In accordance with the established principles hereinbefore outlined, the decision whether to grant a continuance because the moving party's attorney has withdrawn from the case on the day of trial rests in the trial judge's discretion, to be exercised after he has determined from the facts and circumstances of the particular case, whether immediate trial or continuance will best serve the ends of justice.

The facts in *Smith v. Bryant,* 264 N.C. 208, 141 S.E. 2d 303 (1965) are analogous to those we now consider. In *Smith v. Bryant,* an action for an alleged trespass causing damage to the plaintiff's land, the plaintiff sought to recover both compensatory and punitive damages from the defendant-appellant, Emma Bryant. When the case was called for trial appellant's attorney of record, Mr. Rhoe, announced that he had withdrawn from the cause because he had not been paid. The judge did not enter an order permitting the attorney to withdraw. However, he allowed him to do so notwithstanding the record disclosed "that the defendant disputes the question whether or not she has paid her attorney." Thereafter, appellant's motion to continue until she could secure other counsel was denied and the case set for trial on the following day. Unable to secure counsel overnight, appellant represented herself and judgment was entered against her.

On appeal this Court granted the defendant Bryant a new trial. The decision was that the trial judge should not have allowed appellant's attorney of record to withdraw but, "[h]aving acquiesced in counsel's withdrawal on the afternoon of January 9th, his Honor should have continued the case for a reasonable time" instead of setting the case for trial at 9:30 the next morning. After noting that any litigant would probably have had difficulty in finding a lawyer willing to undertake the defense of such an action without more time for investigation and preparation, the Court said:

"It is quite possible that Mr. Rhoe's withdrawal from this case was entirely justified; that he had given defendant adequate notice; and that she negligently or contumaciously failed to attend to her case. If these are the facts, however, the record fails to show them." *Id.* at 212, 141 S.E. 2d at 306.

Similarly, in this case, it may be that respondents' arrangement with Mr. Clark imposed no obligation upon him to

try their case in all events. However, Mr. Newnan Shankle's affidavit is to the contrary, and Judge Seay failed to question either Mr. Newnan Shankle or Mr. Clark with reference to the timing and the terms of the latter's employment as counsel. Thus, so far as the record reveals, respondents had engaged an attorney who was informed of the date of the trial, had accepted a $200.00 retainer, and had accompanied respondents to the courthouse. Thereafter, after a discussion with the judge, the attorney withdrew without prior notice to respondents that his employment was contingent or conditional upon the outcome of "a discussion with the judge." Upon the convening of court the judge called this case as the first one calendared for trial and stated that he had received a motion to continue from respondent Braxton Shankle, and he would deny it. Then, as shown in the preliminary statement of facts, he summarily denied Mr. Newnan Shankle's motion for a continuance, for a pretrial conference, and for a jury trial.

[5]    Upon this record respondents were prima facie entitled to a continuance and the rationale of the decision in *Smith v. Bryant, supra,* dictates the decision here. We hold that the trial judge erred in denying respondents' motion to continue without exploring the matter further.

Indisputably respondents were prejudiced by having to proceed to trial without an attorney. The pleadings and the transcript of the testimony adduced at the trial disclose an intra-family controversy in which proof of crucial and disputed facts will be governed by technical rules of evidence. It is quite apparent that the trial of this case is beyond the capability of laymen and that without counsel respondents will be lost. The petitioner, a 77-year-old gentleman who is partially deaf, presented an unsolved problem to his own attorney on direct examination, and, on cross-examination, one with which the respondents were not equipped to cope. This confrontation between uncle, nieces and nephews demanded the professionalism of an attorney.

[6]    After considering the record we are entirely convinced that the Court of Appeals correctly concluded that the ends of justice require a new trial. It is patent that neither side was prepared for the trial which Judge Seay attempted to conduct; that the evidence was not developed, and the issues which will determine the merits of the controversy were never defined. The evidence fomented questions it did not answer and suggested issues the

Shankle v. Shankle

pleadings do not raise. It is noted that, although one of the respondent's assignments of error is that the court erred "in refusing to allow respondents to offer evidence tending to ripen title in respondents by adverse possession," their answer contains no plea of adverse possession. Judge Armstrong's order that this case not be calendared until pretrial orders had been filed was most certainly intended as a warning that this land suit was a minefield.

This case will be remanded to the end that a pretrial can be held, the pleadings amended, and the parties given an opportunity to use the methods of discovery available to them.

It also appears from the record that the trial court denied respondents' motion for a jury trial as a matter of course and without considering the background of the case or hearing any argument on the motion. At the next trial either petitioner or respondents, if so advised, may move for a jury trial under G.S. 1A-1, Rule 39 (b), which authorizes the court, in its discretion, to order a trial by jury notwithstanding the failure of a party to request it.

[7] Although the parties here did not demand a jury trial in the manner provided by Rule 38, *all* parties did request trial by jury, and the clerk noted the request in her order transferring the cause (begun as a special proceeding) to the civil issue docket of the Superior Court. Thus, all parties were not only apprised of the demand, they had participated in it; and the clerk, who recorded the demand in her order of transfer, had ample notice for calendaring purposes that the case for trial by jury. Therefore, as indicated by the Court of Appeals, in this particular factual situation, it would seem that the parties' request and the clerk's notation accomplished the purpose of Rule 38. Nothing else appearing in the interim, we anticipate that at the next trial the court will exercise its discretion in favor of a jury trial in the event one is requested.

The decision of the Court of Appeals vacating the judgment of the Superior Court and remanding the cause for a trial *de novo* is

Affirmed.