IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-725

Filed 5 March 2024

Wake County, No. 19CVS8664

MIKE CAUSEY, COMMISSIONER OF INSURANCE OF NORTH CAROLINA, Petitioner,

v.

SOUTHLAND NATIONAL INSURANCE CORPORATION, SOUTHLAND NATIONAL REINSURANCE CORPORATION, BANKERS LIFE INSURANCE COMPANY, COLORADO BANKERS LIFE INSURANCE COMPANY, North Carolina Domiciled Insurance Companies, Respondents.


Appeal by intervenor-appellant from orders entered 30 December 2022 by Judge A. Graham Shirley II in Wake County Superior Court. Heard in the Court of Appeals 23 January 2024.


*Attorney General Joshua H. Stein, by Deputy Solicitor General James W. Doggett, Special Deputy Attorney General Daniel S. Johnson, and Special Deputy Attorney General M. Denise Stanford, for petitioner-appellee.*

*Williams Mullen, by Wes J. Camden, Caitlin M. Poe, and Lauren E. Fussell, for respondents-appellees.*

*Fox Rothschild LLP, by Matthew Nis Leerberg and Condon Tobin Sladek Thornton Nerenberg PLLC, by Aaron Z. Tobin, for intervenor-appellant.*


FLOOD, Judge.


Intervenor-Appellant GBIG Holdings, LLC ("GBIG") appeals from two orders entered 30 December 2022—an order denying GBIG's motion for a continuance to allow discovery and an order of liquidation against Bankers Life Insurance Company

("BLIC") and Colorado Bankers Life Insurance Company ("CBLIC"). Our review of the Record reveals that GBIG should not have been allowed to intervene; nevertheless, the trial court did not err in denying GBIG's motion to continue and ordering BLIC and CBLIC into liquidation. Accordingly, we modify the trial court's orders to clarify GBIG is not a proper party and affirm.

## I. <u>Facts and Procedural Background</u>

The case before us is one of many cases stemming from the insolvency of several insurance companies owned by Greg Lindberg ("Lindberg"). Here, we provide only the facts pertinent to this appeal and those relevant facts that have not previously been addressed by this Court in *Southland National Insurance Corporation v. Lindberg*, 289 N.C. App. 378, 889 S.E.2d 512 (2023).

Respondents-Appellees Southland National Insurance Corporation ("Southland"), BLIC, and CBLIC are licensed domestic insurers, owned by GBIG. GBIG is wholly owned by Lindberg. On 18 October 2018, Southland, BLIC, and CBLIC consented to be placed under administrative supervision, following concerns from Petitioner-Appellee Commissioner of Insurance Mike Causey ("Causey"), that the companies would be financially unable to meet outstanding obligations to their policyholders. During the period of administrative supervision, Causey determined that under the current investment structure, Southland, BLIC, and CBLIC lacked the liquidity to pay their policyholders and ultimately placed the companies into rehabilitation.

### *The Southland Liquidation Hearing*

After over two years of supervising Southland, on 21 March 2021, Causey filed a petition for liquidation due to Southland's insolvency.  On 14 April 2021, GBIG filed an objection to the petition for liquidation as well as a motion for continuance to allow for discovery, prompting Causey to file a response in which he asserted GBIG lacked standing under N.C. Gen. Stat. § 58-30-95 (2021) to bring an objection to the petition. On 16 April 2021, the petition for liquidation of Southland was heard and the trial court, in granting GBIG's motion to intervene, stated, "I do believe [GBIG] ha[s] the right to contest [the petition]."  Following the hearing, an order (the "Southland Order") was entered, in which the trial court found:

> 10.    [Causey] contends that GBIG lacks standing to defend against this petition because [he] seeks a liquidation order based solely on 58-30-11—which does not mention any right to defend. However, the immediately preceding statute, Section 58-30-95, explicitly requires the [c]ourt to "permit the directors of the insurer to take such action as are reasonably necessary to defend against the petition [for liquidation]," at least for petitions arising under that section. The [c]ourt finds it unnecessary to decide whether there is a statutory right to defend against a petition arising solely under 58-30-100, because the [c]ourt will exercise its "broad supervisory power" to allow GBIG to contest whether [Southland] is insolvent under the statutory definition of insolvency[.]
>
> 11.    [Causey] contends that only "the directors of the insurer," may defend against the petition under Section 58-30-95(a) and therefore, GBIG does not have standing to defend against this petition. GBIG, in contrast, contends that under these circumstances, where [Southland] no longer has active directors, the statutory right of defense

> vests in GBIG as [Southland's] sole shareholder and owner. [Causey] notes that as Rehabilitator he possesses the statutory power to exercise and enforce all rights, remedies, and powers of the sole shareholder, under Section 58-30-85 (a)(19). Again, the [c]ourt finds it unnecessary to decide whether GBIG may defend against the petition as a matter of statutory right, because the [c]ourt will instead invoke its broad supervisory power to allow GBIG to contest whether [Southland] is insolvent under the statutory definition of insolvency.

Ultimately, as to the Southland liquidation petition, the trial court concluded that GBIG would be allowed to "contest whether [Southland] [was] insolvent under the statutory definition of insolvency" and may conduct limited prehearing discovery, but neglected to rule specifically on whether GBIG had standing to intervene.

On 10 June 2021, Southland, Causey, and GBIG jointly motioned to stay the liquidation proceedings, which the trial court granted, allowing the parties to reschedule for a later date.

A few months later, on 3 November 2021, GBIG filed a motion seeking authority from the trial court to propose a plan of rehabilitation for Southland, BLIC, and CBLIC. In its order denying GBIG's motion, the trial court found:

> Without specifically ruling on the standing issue, this [c]ourt noted that N.C. Gen. Stat. § 58-30-95 permits directors of the insurer to take action to defend against a liquidation petition, and therefore found it unnecessary to determine whether GBIG [ ] had standing to file an objection. Instead this [c]ourt exercised "broad supervisory power" to allow GBIG [ ] to contest whether [Southland] is insolvent as defined by statute for the purpose of hearing on that specific determination.

*The BLIC and CBLIC Liquidation Hearing*

Nearly one year later, on 1 November 2022, Causey filed a verified petition for an order of liquidation against BLIC and CBLIC, asserting that the companies were insolvent within the meaning of Chapter 58 of the North Carolina General Statutes. At the time of filing, BLIC's assets of $253,163,012 did not exceed its liabilities of $345,062,743, and CBLIC's assets of $1,369,052,180 did not exceed its liabilities of $2,508,953,520. Two weeks later, GBIG filed an objection to the petition for liquidation as well as a motion for continuance to allow discovery, asserting that, as the "parent company" of both BLIC and CBLIC, it should be allowed to present evidence showing neither company was insolvent.

On 21 November 2022, a hearing on GBIG's motion for a continuance to allow for discovery came on, during which the trial court engaged in a lengthy colloquy with counsel for GBIG regarding GBIG's participation in the matter. When asked where the directors of BLIC and CBLIC were, counsel for GBIG stated, "[w]ell, Your Honor, the directors were in effect disbanded when they filed liquidation." Unconvinced, the trial court then asked counsel for GBIG to point to a statute that disbands directors of an insurer upon filing of liquidation, which counsel for GBIG could not do. Eventually, counsel for GBIG conceded that, at the time the liquidation petition was filed, both BLIC and CBLIC had directors; therefore, those directors could be in court to defend against the petition.

The trial court continued questioning counsel for GBIG about whether the Rules of Civil Procedure governed this action, asking specifically if "every petition filed in Superior Court [was] governed by the Rules of Civil Procedure," to which counsel for GBIG responded, "I don't know the answer to that question." Answering its own question, the trial court clarified by stating that not all petitions in superior court are governed by the Rules of Civil Procedure. The trial court went on to explain that "the Legislature has recognized that in a liquidation proceeding, [] the directors who owe a fiduciary duty can come in and argue against [the petition]," and again asked, "so why aren't the directors here?" The following exchange then occurred:

> [COUNSEL]: My understanding is that the board, there were some directors that were in place at the time. Then the corporations were placed into rehabilitation. Those directors, I believe some of them, they've done nothing essentially since that time and would be surprised to know that they have any obligations at this time.
>
> THE COURT: Well, who are those directors?
>
> [COUNSEL]: I don't know their names right off the top of my head.
>
> THE COURT: You have done absolutely no investigation[.]

After the lengthy back-and-forth, the trial court ultimately concluded from the bench that "when it comes to defending against an order of liquidation, the statute only authorizes directors to do that." The Court further stated that it presumes the Legislature used the word "directors" to mean "directors, not anyone else." Apparently dissatisfied with GBIG's lack of knowledge regarding the whereabouts of

BLIC's and CBLIC's directors, the trial court stated "GBIG has made no – apparently no investigation into" where the directors were or who they were. Ultimately, with respect to the BLIC and CLBIC liquidation petitions, the trial court found that "GBIG does not have standing."

Upon holding from the bench that GBIG lacked standing, counsel for GBIG motioned to intervene "both as a matter of right under 24(a) and under permissive intervention under 24(b)." After allowing GBIG's motion, the trial court added, "[y]ou should have made your motion to intervene some time ago."

On 30 December 2022, following the hearing, the trial court entered two orders—one denying GBIG's motion for continuance to allow for discovery (the "Continuance Order") and another, ordering BLIC and CBLIC into liquidation (the "Liquidation Order"). In the Continuance Order, the trial court stated its findings:

> 110. The Court finds the General Assembly's distinction between shareholders and directors is intentional and that the General Assembly conferred no right upon the shareholders of an insurer to defend against a petition for an order of liquidation. The absolute right to defend against a petition to liquidate rest solely with the insurer's board of directors. Unless otherwise ordered by the [c]ourt, the shareholders have no such right to defend against a petition for an order of liquidation and may only defend against such action as the [c]ourt in its discretion allows.
>
> . . . .
>
> 122. To the extent that there is any ambiguity in the [c]ourt's prior rulings on this issue, for the absence of all doubt, the [c]ourt hereby amends such interlocutory orders pursuant to its inherent authority to conform to this Order

holding that GBIG does not have a statutory right to oppose the liquidation of [BLIC and CBLIC].

. . . .

158. At the hearing, GBIG orally moved to intervene in this matter. In its discretion, the [c]ourt grants GBIG's oral [m]otion to [i]ntervene in this matter. The [c]ourt does not base its ruling on any finding or conclusion that GBIG has carried its burden under Rule 24(a) or (b) of the North Carolina Rules of Civil Procedure assuming that the Rules of Civil Procedure [a]pply. Rather, the [c]ourt allows the intervention in its discretion under Article 30 of Chapter 58 of the North Carolina General Statutes to administer the rehabilitation and liquidation proceedings.

Ultimately, the trial court concluded the Continuance Order by stating that, in its discretion, it would grant GBIG's motion to intervene "as a non-party in this matter for the purposes of informing the [c]ourt through argument and evidence at the hearing on the petition for liquidation." The trial court echoed that statement again in the Liquidation Order, finding: "At the hearing on [the Liquidation Petition] this [c]ourt ruled that GBIG [ ], the sole shareholder of BLIC and CBL[IC] did not have a statutory right to object to or contest the Verified Petition. Nevertheless, the [c]ourt granted GBIG's oral motion to intervene in the action."

GBIG filed timely notice of appeal from both the Continuance Order and Liquidation Order.

## II. <u>Jurisdiction</u>

The Continuance Order, while interlocutory, is immediately appealable under N.C. Gen. Stat. § 1-278, which provides this Court may "review any intermediate

order involving the merits and necessarily affecting the judgment." N.C. Gen. Stat. § 1-278 (2023). The Liquidation Order constitutes a final judgment in the liquidation proceedings against BLIC and CBLIC and is therefore appealable under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

### III. Analysis

On appeal, GBIG argues the trial court erred in denying its motion for a continuance to allow for discovery and ordering BLIC and CBLIC into liquidation. As a threshold issue, however, we must first consider whether the trial court properly exercised "broad discretionary power" when it allowed GBIG to intervene as a non-party.

**A. GBIG's Participation in the BLIC and CBLIC Liquidation Hearing**

Causey argues GBIG lacks standing to intervene against the liquidation petition because Chapter 58, Article 30 expressly states that the trial court shall grant "the directors of the insurer to take such action as are reasonably necessary to defend against the petition[.]" On the other hand, GBIG argues it should be allowed to intervene because the trial court had allowed it to intervene in the past, and it has a valuable property interest in both BLIC and CBLIC.

When a trial court's discretionary ruling rests on the interpretation of a statute, constructions of those statutes are reviewed *de novo*. *Myers v. Myers*, 269 N.C. App. 237, 241, 837 S.E.2d 443, 448 (2020). Rule 1 of the North Carolina Rules of Civil Procedure applies "in all actions and proceedings of a civil nature except when

a differing procedure is prescribed by statute." N.C. Gen. Stat. § 1A-1, Rule 1 (2023). Our Supreme Court in *In re Ernst & Young, LLP* held, however, that when "the legislature has prescribed specialized procedures to govern a particular proceeding," the Rules of Civil Procedure "do not apply." 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). Finally, "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe [it] using its plain meaning." *Burgess v. Your House of Raleigh Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990).

In *In re Ernst & Young*, our Supreme Court considered facts very similar to the case at bar. Ernst & Young sold several tax shelters to Wal-Mart and then helped Wal-Mart restructure to implement the tax shelters. 363 N.C. at 613, 684 S.E.2d at 152. Pursuant to N.C. Gen. Stat. § 105-258(a)(2), the Secretary of Revenue elected to request Ernst & Young provide testimony and documents relating to Wal-Mart's tax shelters. *Id.* at 613, 684 S.E.2d at 152. Ernst & Young only partially complied, prompting the Secretary to pursue a court order compelling it to comply with the summons. *Id.* at 613, 684 S.E.2d at 152. Wal-Mart then filed both a motion to intervene and a motion to dismiss. *Id.* at 614, 684 S.E.2d at 153. In its motion to intervene, Wal-Mart claimed intervention was "the only way to assert its due process rights under the North Carolina and United States Constitutions." *Id.* at 614–15, 684 S.E.2d at 153. In its motion to dismiss, Wal-Mart claimed the case should be dismissed for failure to comply with the North Carolina Rules of Civil Procedure's

service requirements. *Id.* at 614, 684 S.E.2d at 153. The trial court allowed the motion to intervene but denied the motion to dismiss.

Upon review, our Supreme Court considered, *inter alia*, whether the precise language of N.C. Gen. Stat. § 105-258(a) required the Secretary of Revenue to initiate "a civil action as defined in the General Statutes governing civil procedure." *Id.* at 617, 684 S.E.2d at 154. Ultimately, the Supreme Court held that, because the Secretary of Revenue's initial inquiry under the statute did not explicitly involve filing a civil complaint or initiating a civil action, the statute was a "self-contained, specialized procedure, supplant[ing] the Rules of Civil Procedure." *Id.* at 617, 684 S.E.2d at 155. The Supreme Court further concluded that "although the Court of Appeals erred in holding to the contrary, it correctly affirmed the order of the trial court in denying Wal-Mart's motion to dismiss." *Id.* at 620, 684 S.E.2d at 156. Ultimately, the Supreme Court modified and affirmed the decision of this Court. *Id.* at 620, 684 S.E.2d at 156.

Subsequently, this Court in *In re Simmons* cited to *In re Ernst & Young* to support the conclusion that "[a]lthough our North Carolina Rules of Civil Procedure typically 'apply in all actions and proceedings of a civil nature[,]' the Rules do not apply 'when a differing procedure is prescribed by statute.'" __ N.C. App. __, __, 893 S.E.2d 271, 273 (2023) (alternation in original) (quoting N.C. Gen. Stat. § 1A-1 Rule 1). In *In re Simmons*, this Court considered whether the trial court erred in denying a motion to set aside an order allowing a foreclosure sale. *Id.* at __, 893 S.E.2d at

272. The grantors argued that the trial court erred in denying their motion pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure. *Id*. at __, 893 S.E.2d at 272. Ultimately, this Court held that the North Carolina Rules of Civil Procedure do not apply to foreclosure proceedings because the rules were not "specifically engrafted into the [foreclosure] statute." *Id*. at __, 893 S.E.2d at 274.

Following the precedent set in *In re Ernst & Young* and *In re Simmons*, we note that when a statute describes a "proceeding of a civil nature with its own specialized procedure[,]" that statute then "supplants the Rules of Civil Procedure." *In re Ernst & Young*, 363 N.C. at 620, 684 S.E.2d at 156. Further, following this Court's holding in *In re Simmons*, the North Carolina Rules of Civil Procedure apply only when specifically "engrafted" into a statute that describes a proceeding with its own specialized procedure. *See In re Simmons*, N.C. App. at ___, 893 S.E.2d at 274.

Here, applying the same tenets of statutory construction, the clear and unambiguous language of N.C. Gen. Stat. § 58-30-95 states that "[t]he [c]ourt shall permit the directors of the insurer to take such actions as are reasonably necessary to defend against the petition[.]" N.C. Gen. Stat. § 58-30-95. Similar to the optional authority given to the Secretary of Revenue to request documents and testimony in *In re Ernst & Young*, here, the statute does not explicitly require the directors to initiate a civil action or file a complaint. Rather, the statute only confers upon the directors of an insurer the *option* to take necessary actions to defend against a

liquidation petition. *See* N.C. Gen. Stat. § 58-30-95. Notably absent from the statute is any directive that directors *shall* file a civil complaint.

For those reasons, we conclude N.C. Gen. Stat. § 58-30-95 is a proceeding of a civil nature with its own specialized procedure, and therefore, it supplants the North Carolina Rules of Civil Procedure. *See In re Ernst & Young*, 363 N.C. at 620, 684 S.E.2d at 156. Having concluded that Section 58-30-95 supplants the Rules of Civil Procedure, it follows that the procedure for defending against a liquidation petition is contained in the express, unambiguous language of the statute, which grants *directors*, and directors alone, the power to take necessary actions to defend against liquidation petitions. To hold otherwise would eviscerate the thrust of our Legislature's intent in enacting N.C. Gen. Stat. § 58-30-95 by allowing any interested parties to participate in liquidation proceedings by asserting standing under N.C. R. Civ. P. 24(a) (allowing a non-party to intervene of right when they have an interest in the property or transaction) or N.C. R. Civ. P. 24(b) (allowing for permissive non-party intervention when the non-party's "claim or defense and the main action have a question of law or fact in common").

Where GBIG is not a director of either BLIC or CBLIC, non-party GBIG did not have standing to intervene, nor should it have been allowed to intervene in the liquidation proceeding simply because the trial court previously exercised its broad discretionary power to allow it to intervene in the Southland liquidation. *See* N.C. Gen. Stat. § 58-30-95.

**B. Trial Court's Rulings on the Continuance and Liquidation Orders**

Having concluded the trial court erred when it allowed GBIG's motion to intervene, we next consider whether the trial court nevertheless acted properly when entering both the Continuance Order and the Liquidation Order. GBIG argues the denial of its motion for a continuance "prevented it from having a meaningful opportunity to defend against the liquidation petition" and therefore, the trial court erred in denying its motion to continue and entering the liquidation order. We disagree.

1. *The Trial Court's Denial of GBIG's Motion to Continue*

An order denying a motion for continuance is reviewed for abuse of discretion. *Shankle v. Shankle*, 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976). Under an abuse of discretion standard, reversal is appropriate only to correct "gross abuse," such as where a decision "was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

A trial court may grant a continuance if the movants have "acted with diligence and in good faith[.]" *May v. City of Durham*, 136 N.C. App. 578, 581, 525 S.E.2d 223, 227 (2000). Accordingly, a movant cannot "use [its own] self-imposed delay to support a request for a continuance." *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 508, 320 S.E.2d 892, 899 (1984).

Here, the trial court correctly determined that GBIG "should have made [its] motion to intervene some time ago," given GBIG waited two weeks after the superior

court noticed a hearing to seek a continuance. Further, GBIG's argument that the denial of its motion to continue prevented it from having a meaningful opportunity to defend against liquidation is disingenuous, given both BLIC and CBLIC had been making detailed quarterly disclosures since being placed in rehabilitation.

Considering GBIG waited two weeks after being noticed of the upcoming hearing to file a motion for continuance, it would appear to this Court that GBIG's delay was self-imposed. For that reason, the trial court's decision to deny GBIG's motion can hardly be considered "so arbitrary that it could not have been the result of a reasoned decision." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527.

### 2. *The Trial Court's Liquidation Order*

Conclusions of law are reviewed *de novo* on appeal. *See State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). Under N.C. Gen. Stat. § 58-30-10(13), an insurer is considered insolvent when it is unable to pay its obligations when they are due or if "its admitted assets do not exceed its liabilities[.]" N.C. Gen. Stat. § 58-30-10(13) (2023).

The Record is replete with evidence to support the trial court's conclusion that both BLIC and CBLIC were insolvent and "in such condition as to render the continuance of its business hazardous, financially, or otherwise, to its

- 15 -

policyholders[.]" At the time of filing the liquidation petition, BLIC's assets of $253,163,012 did not exceed its liabilities of $345,062,743, and CBLIC's assets of $1,369,052,180 did not exceed its liabilities of $2,508,953,520, rendering them both insolvent under N.C. Gen. Stat. § 58-30-10(13). In ordering both BLIC and CBLIC into liquidation, the trial court focused on Article 30's purpose—to protect the interests of thousands of policyholders in the State of North Carolina. *See* N.C. Gen. Stat. § 50-30-1(c) (2023).

For the aforementioned reasons, we affirm both the Continuance Order and the Liquidation Order and modify each order to clarify that GBIG should not have been allowed to intervene pursuant to N.C. Gen. Stat. § 58-30-95 or through the exercise of the trial court's broad discretionary power. *See In re Ernst & Young, LLP*, 363 N.C. at 620, 684 S.E.2d at 156 (concluding that, despite this Court's incorrect conclusion that the Rules of Civil Procedure superseded a statutory requirement, nevertheless the order should be modified, yet affirmed).

## IV. <u>Conclusion</u>

In conclusion, we hold that as a shareholder, GBIG should not have been allowed to intervene and defend against the liquidation petition, as only a company's directors are permitted to intervene to defend under N.C. Gen. Stat. § 58-30-95. Where the trial court allowed GBIG to participate, we modify both the Continuance Order and the Liquidation Order to clarify that GBIG is not a proper party to the action and affirm.

MODIFIED AND AFFIRMED.

Judges ARROWOOD and HAMPSON concur.