IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-708

No. COA22-104

Filed 1 November 2022

Mecklenburg County, No. 19-CVS-20203

D.V. SHAH CORP., Plaintiff,

v.

VROOMBRANDS, LLC, a North Carolina limited liability company, and VICTOR OBAIKA, Defendants.

Appeal by Defendants from order entered on 10 June 2021 by Judge Karen Eady Williams in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 June 2022.

*Miller Walker & Austin, by Carol L. Austin, for the Plaintiff-Appellee.*

*Nexsen Pruet, PLLC, by Austin King and Caitlin A. Mitchell, for the Defendant-Appellant.*

JACKSON, Judge.

¶ 1        Victor Obaika and Vroombrands, LLC ("Defendants") appeal the trial court's order granting summary judgment in favor of D.V. Shah Corp. ("Plaintiff") and awarding Plaintiff attorney's fees. We vacate the trial court's order and remand the case for further proceedings.

## I.   Background

¶ 2        On 1 April 2018, VroomBrands, LLC ("VroomBrands") entered into a commercial lease of a gas station, convenience store, and tire shop from Plaintiff.

Eight days later, Mr. Obaika, the sole member and manager of VroomBrands, signed an unconditional personal guaranty of VroomBrands's obligations under the lease. The lease term was from 1 April 2018 to 31 March 2023. VroomBrands agreed to pay $4,500 on the first of each month, real property taxes on the property, miscellaneous fees, and a security deposit of $13,500, which Plaintiff had the right to apply to any arrearage in rent or to other payments due under the lease in the event of a default. By signing the lease, Mr. Obaika agreed on behalf of VroomBrands to pay all costs associated with a breach of the lease, including reasonable attorney's fees. The lease included a merger clause, which provides that the lease "contains a complete expression of the agreement between the parties and there are no promises, representations or inducements except such as are [t]herein provided."

¶ 3    Mr. Obaika paid the security deposit in full as well as the rent for nearly a year, but never paid the property taxes. In order to obtain gas for the service station Defendants were operating, Plaintiff released $9,000 of the security deposit to pay Mid-State Petroleum for gas. Mr. Obaika was aware of and consented to this arrangement.

¶ 4    Mr. Obaika stopped paying rent on 1 February 2019. Defendants vacated the premises on 1 October 2019.

¶ 5        After some difficulty finding a new tenant during the COVID-19 pandemic, Plaintiff eventually relet the property on 1 August 2020 for a monthly rent of only $1,000.

¶ 6        Plaintiff filed its Complaint, verified by Plaintiff's president, on 17 October 2019. No summons is included in the record, nor is any evidence of when or how Defendants were served; there is, however, a stipulation that the trial court had personal jurisdiction over the parties.

¶ 7        Defendants filed their Answer and Counterclaim on 1 June 2020. On 15 June 2020, Plaintiff moved to dismiss the counterclaim. The trial court entered a scheduling order on 15 June 2020, setting (1) the matter for trial on 1 February 2021; (2) 16 November 2020 as the close of discovery; and (3) a dispositive motion deadline of 1 December 2020. By a 22 January 2021 administrative amendment to the scheduling order, trial was postponed from 1 February 2021 to 28 June 2021 due to COVID-19.

¶ 8        The scheduling order provides that "an extension of the trial date after the end of the discovery deadline[] does not extend the discovery deadline[,]" and since discovery closed on 16 November 2020—well before 22 January 2021, the date to which trial was postponed—the postponement of trial did not change any other date in the scheduling order.

¶ 9        On 15 September 2020, Plaintiff propounded its first set of interrogatories and requests for production of documents.  On 18 November 2020, Mr. Obaika responded to this written discovery, making various and sundry objections and asserting claims of privilege, as well as offering to produce non-privileged documents at a mutually convenient time and location.  He did not, however, produce any responsive documents.  Plaintiff subsequently emailed Shawn Copeland, then Defendants' counsel, to inform Mr. Copeland that Plaintiff considered Defendants' discovery responses inadequate and that Defendants' failure to produce any documents in response to the requests for production was unacceptable.  Plaintiff's counsel notified Mr. Copeland that Plaintiff would file a motion to compel production of the documents if Defendants did not supplement their responses and produce the documents.  Mr. Copeland responded by email one week later.  On 7 December 2020, Mr. Copeland's office relayed to Plaintiff's counsel that any supplemental responses would be delayed due to a serious family medical issue.

¶ 10        Plaintiff did not file any dispositive motions by the dispositive motion deadline.  Nor did Plaintiff file a motion to compel or any dispositive motion while Defendant was still represented by Mr. Copeland.  Instead, after Mr. Copeland moved to withdraw as Defendants' counsel on 5 January 2021, with the other parties' consent, and the court granted the motion to withdraw in an order entered 3 February 2021, Plaintiff filed a motion for summary judgment.  Plaintiff filed the motion on 29 April

2021—35 days after the dispositive motion deadline—and exactly 60 days from the date set for trial. Discovery had closed, and as previously noted, Plaintiff had not moved to compel production of the documents or for Defendants to supplement their responses, despite notifying Defendants' former counsel that Plaintiff intended to do so. Nor had Plaintiff ever moved for a default or default judgment as a sanction for Defendants' failure to produce documents in response to Plaintiff's requests for production.

¶ 11 On 29 April 2021, when Plaintiff filed the motion for summary judgment, Plaintiff's counsel caused the motion to be served on Mr. Copeland—Defendants' former counsel—not either of Defendants—even though counsel had joined the 3 February 2021 order allowing Mr. Copeland to withdraw as Defendants' counsel over three months beforehand, on 18 January 2021—and had not been informed at the time the motion for summary judgment was served of the identity of any new counsel representing either of Defendants.

¶ 12 Then, on 7 May 2021, Plaintiff noticed the motion for hearing, noticing the hearing for 24 May 2021. Nothing in the record indicates whether Plaintiff corresponded with Defendants or counsel for either of them before selecting 24 May 2021 as the date for the hearing, but the fact that Plaintiff's counsel served Defendants' former counsel rather than Defendants with the motion a week beforehand suggests there was no communication whatsoever about the date of the

hearing between Plaintiff's counsel and Defendants prior to Plaintiff noticing a motion for hearing that had not even been served on Defendants. The notice of hearing omitted any mention of Defendants' counterclaim. What is more, rather than serving Defendants' former counsel with the notice of hearing—as Plaintiff's counsel had with the motion itself—Plaintiff's counsel caused the notice to be served on Defendants—a week after serving their former counsel with the *motion.*

¶ 13        Consequently, it was not until 7 May 2021 that Defendants were served with Plaintiff's 29 April 2021 motion for summary judgment and Plaintiff's counsel served Defendants with an *amended* certificate of service reflecting service of *both* the motion and the notice of hearing on Defendants that day. Defendants thus only received notice of the date of the hearing on Plaintiff's motion for summary judgment—a date it does not appear either of them were consulted about—ten business days ahead of the hearing.

¶ 14        Four days later, on 14 May 2021, Mr. Obaika sent Plaintiff's counsel an email in which he requested that the affidavit in support of Plaintiff's motion for summary judgment be shared with him. Plaintiff's counsel did not serve Defendants with this affidavit until 20 May 2021, two business days before the 24 May 2021 hearing. Although the notary stamp on the affidavit states that the affidavit was signed on 19 May 2021, the clerk's file stamp on the affidavit appears to be for 12:27 p.m. on 21

May 2021. Nothing in the record explains the discrepancy between the date on the notary seal on the affidavit and the time stamp on the affidavit.

¶ 15 Two business days in advance of the hearing—also on 20 May 2021—Plaintiff served a Memorandum of Points of Authorities in Support of Plaintiff's Motion for Summary Judgment on Defendants. There is no file stamp on this filing in the record on appeal so the date it was filed with the court—and indeed, whether it was filed at all—is not known. The transcript of the 24 May 2021 hearing suggests that the filing was shared with the court in advance of the hearing.

¶ 16 This Memorandum of Points of Authorities in Support of Plaintiff's Motion for Summary Judgment was the first time Defendants received notice of any kind that Plaintiff was seeking summary judgment on Defendants' counterclaim and affirmative defenses at the 24 May 2021 hearing. The substance of the argument in Plaintiff's motion filed on 29 April 2019 was restricted to Plaintiff's breach of contract claim—there was no mention in the motion of Defendants' counterclaim and affirmative defenses at all. Only the brief served on Defendants two days before the hearing notified Defendants that the counterclaim and Defendants' affirmative defenses were potentially before the court on 24 May 2021 on a motion filed 35 days after the deadline for dispositive motions and while Defendants were not represented by counsel.

The motion came on for hearing before the Honorable Karen Eady Williams in Mecklenburg County Superior Court on 24 May 2021 via WebEx videoconference, in accordance with local COVID-19 protocols. The only record evidence of any actions taken by Plaintiff to follow up on outstanding discovery issues prior to the 24 May 2021 hearing on the motion was from 12 May 2021, ten days before the hearing.

Mr. Obaika appeared *pro se* on his own behalf at the hearing but was not allowed to appear on behalf of VroomBrands because he is not a lawyer. Mr. Obaika objected that the motion was untimely and requested a continuance until he could obtain counsel, but the trial court denied his request. The court posed numerous questions to Plaintiff's counsel about the lack of notice given with regard to Defendants' counterclaim, but in the end, the court heard argument on whether summary judgment was proper with respect to both Plaintiff's claims and Defendants' counterclaim. The court granted summary judgment in favor of Plaintiff on both Plaintiff's claims and Defendants' counterclaim in an order entered 10 June 2021. The court's Order Granting Plaintiff's Motion for Summary Judgment and Request for Attorney's Fees also ordered Defendants to pay Plaintiff a total of $103,078.35—$90,500 for past due and future rent and real property taxes—and $12,578.35 in reasonable attorney's fees.

Defendants timely noted an appeal to our Court.

## II.    Analysis

This case presents the question of whether the trial court abused its discretion in denying Mr. Obaika's request for a continuance. Under the circumstances presented here, we hold that it did.

## A. Standard of Review

"The standard of review for denial of a motion to continue is generally whether the trial court abused its discretion." *Morin v. Sharp*, 144 N.C. App. 369, 373, 549 S.E.2d 871, 873, *disc. rev. denied*, 354 N.C. 219, 557 S.E.2d 531 (2001) (citation omitted). However, "this discretion is not unlimited, and must not be exercised absolutely, arbitrarily, or capriciously, but only in accordance with fixed legal principles." *Shankle v. Shankle*, 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976) (cleaned up). Promotion of substantial justice should be the chief consideration. *Id.* "Before ruling on a motion to continue, 'the judge should hear the evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice.'" *Rossi v. Spoloric*, 244 N.C. App. 648, 651, 781 S.E.2d 648, 651 (2016) (quoting *Shankle*, 289 N.C. at 483, 223 S.E.2d at 386 (1976)).

## B. The Rules of Court in North Carolina Are Rules of Law

The Constitution of North Carolina confers on the General Assembly the authority to prescribe the jurisdiction of North Carolina trial and appellate courts—within constitutional constraints not at issue here—and "to prescribe rules of procedure and practice in the district and superior court divisions of the General

Court of Justice." *State v. Mangino*, 200 N.C. App. 430, 431-32, 683 S.E.2d 779, 780-81 (2009). Article IV, § 13(2) of our Constitution specifically authorizes the General Assembly to delegate the authority to prescribe rules of practice and procedure in North Carolina trial courts to our Supreme Court, N.C. Const. art. IV, § 13(2),[1] and "[t]he General Assembly has authorized our Supreme Court to promulgate rules of practice and procedure for the superior and district courts[,]" *Young v. Young*, 133 N.C. App. 332, 515 S.E.2d 478 (1999) (citing N.C. Gen. Stat. § 7A-34).[2] "Pursuant to this authority, our Supreme Court requires the Senior Resident Judge and Chief District Judge in each judicial district to take appropriate actions such as the promulgation of local rules to [e]nsure prompt disposition of any pending motions or other matters necessary to move the cases toward a conclusion." *Id.* (cleaned up). These "[l]ocal rules are rules of court which are adopted to promote the effective administration of justice[.]" *Mitchell v. Mitchell*, 199 N.C. App. 392, 402, 681 S.E.2d 520, 527 (2009) (internal mark and citation omitted).

In general, our Supreme Court has cautioned that rules of practice and procedure should be applied in favor of "just and prompt consideration and

---

[1] The General Assembly nevertheless retains ultimate authority to "alter, amend, or repeal any rule of procedure or practice adopted by the Supreme Court for" North Carolina trial courts. N.C. Const. art. IV, § 13(2).

[2] Likewise, rules of practice and procedure adopted under the statutory authority conferred on the judicial branch by N.C. Gen. Stat. § 7A-34 must be "supplementary to, and not inconsistent with, acts of the General Assembly." N.C. Gen. Stat. § 7A-34 (2021).

determination of [] the business before [our courts]" rather than be allowed to permit "technical delay[.]" 276 N.C. 735. In a recent reaffirmation of this principle, the Court by a 25 August 2021 order revised Rule 6 of the General Rules of Practice to *require* that counsel first meet and confer with opposing counsel before scheduling a hearing on a motion. *See* N.C. Super. and Dist. Ct. R. 6 (2022) ("An attorney scheduling a hearing on a motion *must* make a good-faith effort to request a date for the hearing on which each interested party is available.") (emphasis added). In that order, the Court specified that "[a]n attorney's failure to comply with th[e] [meet and confer] requirement is an adequate ground on which [a] court may grant a continuance." *Id.*

¶ 24 The General Assembly adopted the North Carolina Rules of Civil Procedure in 1967 and amended them in 1971 pursuant to the authority conferred on it by Article IV, § 13(2) of our Constitution. *See Marks v. Thompson*, 14 N.C. App. 272, 274, 188 S.E.2d 22, 23-24 (1972). Rule 5 of the North Carolina Rules of Civil Procedure requires, in general, that "every pleading subsequent to the original complaint . . . be served upon each of the parties[.]" N.C. Gen. Stat. § 1A-1, Rule 5(a) (2021). It further requires service of "every brief or memorandum in support . . . at least two days before the hearing on the motion." *Id.*, Rule 5(a1).

¶ 25 Rule 56 of the North Carolina Rules of Civil Procedure requires service of any motion for summary judgment "at least 10 days before the time fixed for the hearing."

*Id.*, Rule 56(c). It also requires service of "opposing affidavits at least two days before the hearing." *Id.*

"Affidavits in support of a motion for summary judgment are required by . . . Rules 6(d) and 56(c) to be filed and served with the motion [for summary judgment]," *Burlington Ins. Co. v. Fishermans Bass Cir., Inc.*, 165 N.C. App. 439, 444, 598 S.E.2d 678, 681 (2004) (citation and quotation marks omitted)—and "at least 10 days before the time fixed for the [summary judgment] hearing," N.C. Gen. Stat. § 1A-1, Rule 56(c) (collectively, the "10-day affidavit rule"). *See also* 2 North Carolina Civil Procedure § 56-9 (4th ed. 2021) ("Although Rule 56 is silent, Rule 6(d) requires that summary judgment affidavits be served with the motion.").

Rule 6(b) grants the trial court discretion to enlarge the time within which an affidavit in support of a summary judgment motion may be served if the moving party requests additional time "before the expiration of the period originally prescribed or as extended by previous order." *Nationwide Mut. Ins. Co. v. Chantos*, 21 N.C. App. 129, 131, 203 S.E.2d 421, 423 (1974). "If the request is made after the motion for summary judgment has been served, there must be a showing of excusable neglect." *Id.* In addition to the exception provided by Rule 6(d), Rule 56(e) also "grants the trial judge wide discretion to permit further affidavits to supplement those which have already been served." *Rolling Fashion Mart, Inc. v. Mainor,* 80 N.C. App. 213, 216, 341 S.E.2d 61, 63 (1986) (citation omitted) (emphasis added). "However, this

provision presupposes that an affidavit or affidavits have already been served." *Battle v. Nash Tech. Coll.*, 103 N.C. App. 120, 127, 404 S.E.2d 703, 707 (1991) (citation omitted).

¶ 28    Under the authority delegated by the General Assembly to our Supreme Court, N.C. Const. art. IV, § 13(2), and delegated by our Supreme Court to the Senior Resident Superior Court Judge of the Twenty-Sixth Judicial District of North Carolina, N.C. Gen. Stat. § 7A-34 (2021), encompassing Mecklenburg County, then-Senior Resident Superior Court Judge W. Robert Bell adopted the local rules in effect during the pendency of this case, which are still in effect today, on 20 January 2017.

¶ 29    In Mecklenburg County Superior Court, Local Rule 6 governs scheduling orders—or Case Management Orders ("CMOs")—as they are known there. *See* Mecklenburg ("Meck.") Cnty. Loc. R. 6.  With exceptions for medical malpractice and exceptional civil and complex business cases, which are governed by different rules, when a case is ready to be scheduled for trial, "a Case Management Order ('CMO') will be issued and forwarded to all parties or their counsel of record[,]" which "shall include deadlines for the trial of the case, the filing of dispositive motions, the designation of experts, the completion of discovery, and pre-trial disclosures."  Meck. Cnty. Loc. R. 6.2.  Local Rule 6.3 affords parties the opportunity to seek to modify the scheduling order by either (1) submitting a joint proposed substitute scheduling order within 30 days of entry of the first scheduling order; (2) requesting to be heard by the

court regarding the scheduling order; or (3) notifying the Mecklenburg County Caseflow Manager "that a motion to dismiss the entire complaint, or [] to compel arbitration, or request for designation as Exceptional or Complex Business Case has been filed or submitted[.]" Meck. Cnty. L. R. 6.3. Notably, under Local Rule 6.7, the dispositive motion deadline is one of the only three scheduling dates that cannot be extended or altered by the parties—the others being the trial date and the mediation deadline. Meck. Cnty. L. R. 6.7. Local Rule 6.7(a) specifically provides that "[*u*]*nder no circumstances* shall any agreed extensions or any consent order extensions of the discovery deadline by the Clerk of Superior Court's Office alter the dispositive motion filing deadline or assigned trial date in the CMO." Meck. Cnty. L. R. 6.7(a) (emphasis added).

¶ 30         Local Rule 12 governs motions and motions practice in Mecklenburg County Superior Court. *See* Meck. Cnty. Loc. R. 12. As under newly revised Rule 6 of the General Rules of Practice, under Local Rule 12.1 in Mecklenburg County Superior Court, movants *must* "make a good faith effort to obtain the availability of represented parties involved prior to obtaining a hearing date *and* should refrain from scheduling hearings without *first* attempting a good faith consultation." Meck. Cnty. Loc. R. 12.1 (emphasis added).

¶ 31         Consistent with the two-day requirement of Rules 5 and 56 of the North Carolina Rules of Civil Procedure, Local Rule 12.11 in Mecklenburg County Superior

Court requires submission of briefs-in-support of motions set for hearing to the court and other parties "no later than two business days before the hearing date[.]" Meck. Cnty. Loc. R. 12.1(e).  Local Rule 12.11 is more exacting than Rules 5 and 56 of the Rules of Civil Procedure though, requiring that briefs be submitted "no later than two business days before the hearing date *and* no later than 48 hours prior to the hearing time."  Meck. Cnty. Loc. R. 12.1(e) (emphasis added).  Likewise, Local Rule 12.15, which governs evidence submitted in support of motions set for hearing such as affidavits, deposition transcripts, and other exhibits, requires that any such material be submitted to the court and other parties "no later than two business days before the hearing date *and* no later than 48 hours prior to the hearing time of the hearing."  Meck. Cnty. Loc. R. 12.15(a) (emphasis added).

¶ 32        Local Rule 12.11(e) offers the following instructive example regarding the notice to which parties are entitled in advance of a hearing on a motion:

> For example, if the Motion is scheduled to be heard at 10:00 a.m. on Monday morning, the briefs shall be delivered for receipt by the opposing side no later than 10:00 a.m. on the previous Thursday.  *In no event shall briefs be delivered to the Judge prior to the opposing side.*

Meck. Cnty. Loc. R. 12.11(e) (emphasis added).  As Local Rule 12.11(f) goes on to explain, "[t]he purpose of this rule is to allow the judge to review briefs in advance of the hearing to ensure that oral advocacy is meaningful and to allow counsel *the same time* to review the opposing party's brief in advance of the hearing[,]" Meck. Cnty.

Loc. R. 12.11(f) (emphasis added), i.e., to prevent any party from benefiting from unfair surprise. As a remedy for violations of Local Rule 12.11(e), Local Rule 12.11(g) specifically provides that "the Court may continue the hearing for a reasonable period of time, proceed with the hearing without considering the untimely served briefs, or take such action as justice requires." Meck. Cnty. Loc. R. 12.11(g).

## C. Violations and Apparent Violations by Plaintiff

¶ 33        On 29 April 2021, Plaintiff filed the motion for summary judgment. The motion was not timely: although it was filed more than ten business days in advance of the 24 May 2021 hearing, as required by Rule 56 of the North Carolina Rules of Civil Procedure, the deadlines set by the 15 June 2020 scheduling order governed, and the motion violated the deadline set by the scheduling order. The motion was filed 35 days late, merely 60 days from the trial date. The record does not reflect any attempt by the parties to extend the dispositive motion deadline, nor could they do so by consent. *See, e.g.*, Meck. Cnty. L. R. 6.7(a) ("Under no circumstances shall any agreed extensions or any consent order extensions of the discovery deadline by the Clerk of Superior Court's Office alter the dispositive motion filing deadline[.]").

¶ 34        Plaintiff then noticed the motion for hearing on 7 May 2021 in apparent violation of Local Rule 12.1, which states that parties "should refrain from scheduling hearings without first attempting a good faith consultation" regarding the date of the hearing. Meck. Cnty. Loc. R. 12.1. Although the record does not affirmatively

demonstrate that Plaintiff did not consult with Defendants before selecting 24 May 2021 as the hearing date and noticing the hearing for that date on 7 May 2021, the record does show that Plaintiff's counsel served Defendants' former counsel rather than Defendants with the motion and then a week later served Defendants and not counsel for either of them, current or former, with the notice of hearing, all after joining an order over three months beforehand allowing Defendants' former counsel to withdraw from the case, which strongly suggests Defendants were not consulted about the 24 May 2021 hearing date on or before 7 May 2021, when Plaintiff's counsel noticed it. This apparent violation of Local Rule 12.1 would also have violated newly revised Rule 6 of the General Rules of Practice, had the apparent violation not predated the Supreme Court's 25 August 2021 revision of Rule 6 by three months.

¶ 35        The motion was not properly served. Again, the motion was served on 29 April 2021 on Defendants' former counsel, not Defendants, even though Plaintiff's counsel had joined an order allowing Mr. Copeland to withdraw from the case over three months before the motion was served. Serving Mr. Copeland rather than Defendants violated Rule 5(b)b. of the North Carolina Rules of Civil Procedure, which allows service by mail but requires the mail be sent to the *party's* address, not the address of their former counsel. *See* N.C. Gen. Stat. § 1A-1, Rule 5(b)b. (2021). This defect in service was only cured by Plaintiff when the amended certificate of service for the motion and the notice was filed with the court on 12 May 2021—eight business days

before the hearing Plaintiff's counsel appears to have unilaterally scheduled for 24 May 2021.

¶ 36      Because of the absence of a file stamp on the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment that was the first notice Defendants could have received that their counterclaim and affirmative defenses were potentially before the court on 24 May 2021, we cannot say with certainty that this brief was not timely filed. Above the signature line it is dated 20 May 2021 and the certificate of service reflects a 20 May 2021 date of service. Plaintiff noticed the hearing for 11:30 a.m. on 24 May 2021 so unless the brief was served on Defendants and the court prior to 11:30 a.m. on 21 May 2021, and served on both the court and Defendants at the same time, it was not properly served. *See* Meck. Cnty. Loc. R. 12.1(e), (f).

¶ 37      The brief references a supporting affidavit repeatedly. The certificate of service of this affidavit reflects service of the affidavit on 20 May 2021, the same day as the brief. Although the notary stamp on the affidavit states that the affidavit was signed on 19 May 2021, the clerk's file stamp on the affidavit is for 12:27 p.m. on 21 May 2021, which shows that service of the affidavit violated Local Rule 12.15, which required service of the affidavit on Defendants by 11:30 a.m. on 20 May 2021 (because the hearing was scheduled for 11:30 a.m. on 24 May 2021). This violation of Local Rule 12.15 in the service of the supporting affidavit, the unexplained discrepancy

between date on the notary seal and the time of service, and the absence of a file stamp on the brief in the record on appeal at least supports the inference that the affidavit was filed and served at the same time as the brief and that service of the brief therefore likewise violated Local Rule 12.1(e).

¶ 38        The affidavit was served on Defendants in violation of Local Rule 12.15 even though Mr. Obaika had specifically requested a copy of the affidavit from Plaintiff's counsel a week beforehand.  After finally being served with the motion on 7 May 2021, Mr. Obaika noted in correspondence to Plaintiff's counsel that he had not received any affidavit(s) in support of Plaintiff's motion for summary judgment and requested that counsel provide him with the same on 14 May 2021.  Yet, counsel appears to have ignored this request and instead served the affidavit on Defendants less than 48 hours before the 24 May 2021 hearing.

### D. Plaintiff's Violations and Apparent Violations of the Local Rules Constitute Gamesmanship

¶ 39        "[G]amesmanship and actions designed to minimize adequate notice to one's adversary have no place within the principles of professionalism governing the conduct of participants in litigation." *Collins v. CSX Transp., Inc.*, 114 N.C. App. 14, 20, 441 S.E.2d 150, 153 (1994) (internal marks omitted).  Gamesmanship is both bad for the legal profession and the public it serves because it "leads to cynicism about whether justice prevails in our [] justice system." *State v. White*, 372 N.C. 248, 256,

827 S.E.2d 80, 85 (2019) (Newby, J., dissenting). As our Court has noted with more frequency than should be necessary, the purpose of discovery and motions practice "is to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the receiving party to adequately prepare her case." *GEA, Inc. v. Luxury Auctions Mktg., Inc.*, 259 N.C. App. 443, 451, 817 S.E.2d 422, 429 (2018) (internal marks and citation omitted). Discovery practice should be an "expeditious handling of factual information before trial so that the critical issues may be presented at trial unencumbered by unnecessary or specious issues and so that evidence at trial may flow smoothly and objections and other interruptions be minimized[,]" *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976), not an opportunity for gamesmanship.

¶ 40        Our Supreme Court has identified joining opposing counsel's motion only to later engage in conduct inconsistent with joining the motion as an example of gamesmanship. *See, e.g.*, *State v. Sanderson*, 336 N.C. 1, 10 n.2, 442 S.E.2d 33, 39 n.2 (1994) (identifying as gamesmanship a prosecutor initially joining a defense attorney's motion for a mistrial after the prosecutor elicited testimony the court had already ruled inadmissible and "then [the prosecutor] recanted" from joining the motion). Plaintiff's counsel has engaged in precisely this sort of gamesmanship here.

¶ 41        After joining the order concerning Mr. Copeland's withdrawal from the case on 18 January 2021, counsel caused an untimely motion for summary judgment to be

served on Mr. Copeland rather than Defendants over three months later, and then, doubling down on this course, caused a notice of hearing to be served on Defendants rather than Mr. Copeland a week after causing the motion to be served on Mr. Copeland.

¶ 42        It was only after Mr. Copeland withdrew on 3 February 2021 and Plaintiff's counsel knew Defendants were unrepresented that counsel filed the untimely motion for summary judgment, served the motion and a supporting affidavit improperly, and noticed the motion for a hearing date that it does not appear counsel communicated with Defendants about, in violation of Local Rule 12.1.

¶ 43        The course Plaintiff's counsel chose—summary judgment by ambush on unrepresented parties—was unprofessional and unbecoming, as well as in violation of numerous rules. Defendants only received notice of the date of the hearing on Plaintiff's motion for summary judgment—a date it does not appear either of them were consulted about—ten business days ahead of the hearing. Four days later, on 14 May 2021, Mr. Obaika sent Plaintiff's counsel an email in which he requested an affidavit he would only be served with over a week later, less than 48 hours before the hearing, in violation of Local Rule 12.15. The brief without a file stamp in the record in support of Plaintiff's motion, proper service of which therefore cannot be confirmed, was the first time Defendants received notice of any kind that Plaintiff

was seeking summary judgment on Defendants' counterclaim and affirmative defenses.

¶ 44    The trial court nevertheless denied Defendants' request for a continuance and granted summary judgment not only on Plaintiff's claims but also against Defendants on their counterclaim—even though Plaintiff never moved for summary judgment on Defendants' counterclaim, nor properly noticed hearing for any motion on it—and refused to allow Defendants to proffer any evidence in response to Plaintiff's evidence. At first, the trial court recognized and noted the improper notice that was given in the following colloquy with Plaintiff's counsel:

> THE COURT:  Let me stop you there, Ms. Austin, and ask you a question.  In looking at your motion, is this on for both a motion for summary judgment and a motion to dismiss, or is it only on for a motion for summary judgment?  Because you're addressing what I believe is a motion to dismiss the counterclaim.
>
> MS. AUSTIN:    This is on for motion for summary judgment, Your Honor.
>
> THE COURT:  And in summary judgment, it's your case against Defendant.  But as to the Defendants' case against you, the counterclaim is what you're addressing by way of – I'm assuming you're addressing it by way of request for a dismissal.  But my only question is, was it notice for the dismissal as well, or can I even consider that?  That's my – that's my procedural question.
>
> MS. AUSTIN:  Sure. Well, I – the intent was always to address the counterclaim as part of our summary judgment motion.  So the reason why I'm saying motion to – well, the

reason why I'm saying motion to dismiss is – is – because the case law that I was just citing was referring to a motion to dismiss; right?

THE COURT: Okay.

MS. AUSTIN: So I – the – the – the Defendants fraud claim fails, number one, because based on the circumstances of the case, they failed to allege certain facts required to establish a fraud claim. But number two, there's also been no evidence to suggest that there was any fraud.

THE COURT: I guess my – but my question is, are there two different motions before the Court, and only one has been noticed? That's my question.

MS. AUSTIN: No. It's just a motion for summary judgment, Your Honor.

THE COURT: How do you anticipate addressing the counterclaim then? Because that's still – that will still be alive because the summary judgment addresses Plaintiff's case, but it doesn't address Defendants' case.

MS. AUSTIN: Well, we're asking that the Court grant summary judgment in favor of Plaintiff on Plaintiff's claims and to grant summary judgment on Defendants' counterclaim. So, in other words, we're arguing there's no genuine issue of material fact for Defendant to move forward in its fraud –

THE COURT: Understood. Okay. Understood. Thank you.

While the court clearly recognized that no hearing had been noticed as to the Defendants' counterclaim, in the end the court just let it go.

To recapitulate, Plaintiff noticed the motion for hearing on 7 May 2021 in

apparent violation of Local Rule 12.1, which requires "good faith consultation" about scheduling before noticing a hearing. *See* Meck. Cnty. Loc. R. 12.1. Although not in effect on 7 May 2021, this apparent violation would also today constitute an apparent violation of Rule 6 of the General Rules of Practice, which requires that "[a]n attorney scheduling a hearing on a motion [] make a good-faith effort to request a date for the hearing on which each interested party is available." N.C. Super. and Dist. Ct. R. 6 (2022). Our Supreme Court has specifically directed that "[a]n attorney's failure to comply with th[e] [meet and confer] requirement is an adequate ground on which [a] court may grant a continuance." *Id.*

¶ 46        The motion was served on Defendants' former counsel even though Plaintiff's counsel had joined an order in which former counsel had withdrawn three months beforehand and then Plaintiff's counsel served the notice on Defendants, not Defendants' former counsel, a week after serving the motion on Defendant's former counsel. Rules 6(d) and 56(c) of the North Carolina Rules of Civil Procedure required Plaintiff to serve the affidavit at least ten days before the 24 May 2021 hearing, which Plaintiff failed to do. No motion for summary judgment on Defendants' counterclaim and affirmative defenses had been noticed prior to the 24 May 2021 hearing. The motion that was not actually served on Defendants until ten business days before the hearing did not address the counterclaim. The argument in the brief that was not served on Defendants until two business days before the hearing did not address the

counterclaim. Local Rules 12.11(e) and 12.15(a) required Plaintiff to serve the affidavit and brief at least 48 hours before the hearing, which Plaintiff failed to do with respect to the affidavit, and in the absence of a file stamp on the brief in the record on appeal, we cannot say whether it was timely served under Local Rule 12.11(e), but if it was served at the same time as the affidavit, it was not timely served. To remedy violations of Local Rule 12.11(e), Local Rule 12.11(g) specifically provides that "the Court may continue the hearing for a reasonable period of time, proceed with the hearing without considering the untimely served briefs, or take such action as justice requires." Meck. Cnty. Loc. R. 12.11(g). We hold that the trial court abused its discretion when it denied Defendant's request for a continuance here.

### III.     Conclusion

We vacate the order of the trial court and remand the case for further proceedings. On remand, the trial court may hold another summary judgment hearing on both Plaintiff and Defendants' claims or entertain a motion to amend the scheduling order to change the dispositive motion deadline or trial date.

VACATED AND REMANDED.

Judge DILLON concurs in result by separate opinion.

Judge TYSON dissents by separate opinion.

DILLON, Judge, concurring in result.

I agree with our dissenting colleague on many points. For example, because Plaintiff's complaint was verified and the allegations contained therein were sufficient to establish Plaintiff's claim, even if Plaintiff's affidavit was not timely, Defendant was not prejudiced by the trial court's consideration of said affidavit. Also, I agree that Defendants failed to meet their burden to produce evidence showing how much, if any, Plaintiff's damages for Defendants' breach should be reduced because of Plaintiff's failure to mitigate.

However, as explained below, I conclude that the Order should be vacated.

Regarding Plaintiff's breach of lease claims, Defendants were required to bring forth evidence at the summary judgment hearing to rebut Plaintiff's verified complaint. Defendants failed to provide affidavits prior to the hearing, and Defendants' answer was not verified. Defendant Victor Obaika did, though, attempt to provide live testimony at the hearing to show, for example, that Plaintiff committed fraud in the inducement as a defense to Plaintiff's claims. The trial court, however, cut him off, stating, "I can't accept your statements because it's . . . testimonial. I can't accept that in the context of a summary judgment hearing. . . . It has to be provided by way of an affidavit." Clearly, the trial court believed that it *lacked discretion* to allow Defendant Obaika to testify.

Our General Assembly, though, has provided that at motion hearings, the trial court "may direct that the matter be heard wholly or partly on oral testimony[.]" N.C.

Gen. Stat. § 1A-1, Rule 43(e). And our Supreme Court has held that a trial court may consider oral testimony under Rule 43(e) at a summary judgment hearing. *Kessing v. National Mortg.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971) ("Oral testimony may also be received [at a summary judgment hearing] by reason of Rule 43(e).")

¶ 52 Our Supreme Court has held that "there is error when the trial court refuses to exercise its discretion in the erroneous belief that it has no discretion as to the question presented." *State v. Lang*, 301 N.C. 508, 510, 272 S.E.2d 123, 124 (1980). And such error is reversible where prejudice is shown. *Id.*

¶ 53 I conclude the record is sufficient to show prejudice. Defendants' answer and counterclaim sets forth allegations which, if true, create an issue of fact regarding Plaintiff's claims. Accordingly, the trial court's grant of summary judgment for Plaintiff regarding its claims should be vacated.

¶ 54 Regarding Defendants' counterclaims, while many allegations in Defendants' counterclaims, in reality, provide a *defense* to Plaintiff's claims, many also support claims for affirmative relief for Defendants. However, Plaintiff never noticed any motion for summary judgment regarding Defendants' counterclaims. Accordingly, it was inappropriate for the trial court to grant summary judgment on Defendants' counterclaims.

TYSON, Judge, dissenting.

## I.    Background

Victor Obaika is the sole Member and Manager of Vroombrands, LLC, a limited liability company ("LLC" collectively "Defendants"). Plaintiff and LLC entered into a written and integrated commercial lease on 1 April 2018 for real property located in Gaffney, South Carolina to be used as a gas station and convenience store. The lease term was to commence on 1 April 2018 and expires on 31 March 2023. Monthly rent was agreed to be $4,500.00 and due and payable on the first day of each month. LLC also agreed to pay the assessed real property taxes. Obaika personally guaranteed the complete performance of LLC's obligations under the lease. LLC and Obaika also personally agreed in the event of a breach to pay all costs associated with any breach, including attorney's fees.

Beginning 1 February 2019, LLC failed to pay the agreed-upon monthly rental. LLC also failed to pay real property taxes for the tax years 2018 and 2019. Plaintiff demanded LLC pay the overdue sums. LLC refused to do so. LLC vacated the leased premises on or about 1 Oct 2019. Plaintiff re-let the premises beginning 1 Aug 2020 for a $1,000.00 monthly rental.

On 17 Oct 2019, Plaintiff instituted this action alleging breach of contract, seeking enforcement of the guaranty, and requested attorney's fees for LLC's nonpayment of rent beginning 1 February 2019 and nonpayment of real property taxes for the years 2018 and 2019. Defendants asserted affirmative defenses to

Plaintiffs claim and a counterclaim for fraudulent inducement. On 3 February 2021, the trial court granted defense counsel's motion to withdraw as counsel for both Defendants. LLC failed to appear through counsel after receiving proper notice at the hearing on 24 May 2021. Defendant Obaika appeared *pro se.*

The trial court granted Plaintiff's motion for summary judgment for all claims in Plaintiff's complaint and against Defendants' Affirmative Defenses and Counterclaim. The trial court found Defendants owed $90,500.00, calculated as follows: past due rent from Feb 2019 to Oct 2019, plus future rent until premises relet to new tenant, with a credit of $4,500.00 security deposit held by Plaintiff, plus pro-rated real property taxes for 2018 and 2019. The trial court also awarded Plaintiff attorney's fees of $12,578.35. Defendants appeal.

## II.    Issue

Defendants argue the trial court erred in granting summary judgment on Plaintiff's breach of contract claims.

## III.    Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

¶ 61 "The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citation omitted). A party may meet this burden "by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Id.* (citation and quotation marks omitted).

¶ 62 A genuine issue of material fact is one supported by evidence that would "persuade a reasonable mind to accept a conclusion." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted). "An issue is material if the facts alleged would . . . affect the result of the action[.]" *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

¶ 63 When the court reviews the proffers of evidence, verified complaint and affidavits at summary judgment, "[a]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1998) (citation omitted). We review the grant of summary judgment *de novo*. *Id.*

### IV. Issues of Material Fact

¶ 64 Defendants argue summary judgment was not appropriate to resolve

Plaintiff's claims because of the existence of at least three genuine issues of material fact: First, Defendants contend Plaintiff's evidence raises a genuine issue of material fact regarding whether Plaintiff owns the leased property. Second, Defendants contend Plaintiff's evidence raises a genuine issue of material fact of whether Plaintiff reasonably mitigated its damages. Finally, Defendants assert Plaintiff's own evidence raises a genuine issue of material fact regarding whether Plaintiff properly calculated and is entitled to receive its requested $90,500 award of compensatory damages.

¶ 65    Plaintiff argues the undisputed evidence demonstrated the Defendants breached the parties' contract as a matter of law, and the burden shifted to the Defendants to set forth specific facts showing the existence of a genuine issue of fact. Plaintiff argues Defendants *failed to proffer or submit any facts* demonstrating the existence of a genuine issue of material fact. Defendants failed to present any evidence to demonstrate Plaintiff does not own the leased property. The trial court correctly entered summary judgment as a matter of law on Defendant LLC's breach of leasee for Plaintiff on this issue.

¶ 66    Defendants also failed to proffer evidence tending to show Plaintiff failed to reasonably mitigate its damages. In North Carolina, the non-breaching party to a lease has a duty to mitigate his damages upon the other party's breach of the lease. *Chapel Hill Cinemas, Inc. v. Robbins,*143 N.C. App. 571, 582, 547 S.E.2d 462, 470

(Tyson, J., concurring in part and dissenting in part), *rev'd per curiam for reasons stated in the dissent*, 354 N.C. 349, 554 S.E.2d 644 (2001); s*ee also Isbey v. Crews*, 55 N.C. App. 47, 51, 284 S.E.2d 534, 537 (1981).

¶ 67        A plaintiff's duty to mitigate damages following a defendant's breach is a duty that arises as a matter of law. *See, e.g.*, *Tillis v. Calvine Cotton Mills, Inc.*, 251 N.C. 359, 367-68, 111 S.E.2d 606, 613 (1959) (citation omitted) (explaining a party is "required by law to exercise reasonable diligence to minimize damages"); *Gibbs v. Telegraph Co.,* 196 N.C. 516, 522 146 S.E. 209, 213 (1929) (citations omitted) ("[I]t is a well-settled rule of law that the party who is wronged is required to use due care to minimize the loss."). "[T]he duty to mitigate "stems from the implied covenant of good faith and fair dealings" inherent in all contracts."  *See New Towne Limited Partnership*, 113 Ohio App.3d 104, 108, 680 N.E.2d 644, 646 (1996); Barker, *Commercial Landlords' Duty Upon Tenants' Abandonment—To Mitigate*?, 20 J. Corp. L. 627, 644 (1995).

¶ 68        It is undisputed that Defendant LLC, while in admitted breach of the lease, vacated the premises on 1 Oct 2019 and Plaintiff relet the premises as of 1 Aug 2020. Defendant presented no evidence of Plaintiff's lack of efforts or unreasonable delay to seek a new tenant to lease the property.

¶ 69        Plaintiff reasonably relet the premises during the COVID-19 pandemic and within one year of the breach. Defendants failed to challenge or demonstrate that

Plaintiff is not entitled to receive the $90,500.00 award of compensatory damages. From Defendants' first missed lease payment on 1 February 2019 until they vacated the premises on 1 October 2019, $4,500.00 monthly rent due multiplied by the eight-month period equals $36,000.00. From 1 October 2019 when Defendants vacated until 1 August 2020 when Plaintiff relet premises, $4,500.00 of missed monthly rent multiplied by the eleven-month period equals $49,500.00.

¶ 70 Defendants also argue the pro-rated property taxes for six months of 2018 and nine months of 2019 at $6,000.00 and $8,000.00, respectively, were less than the correctly calculated amount. Defendants have failed to show the trial judge's calculations were unreasonable or any error in these calculations. Judge Dillon and I agree: "Defendants failed to meet their burden to produce evidence showing how much, if any, Plaintiff's damages for Defendants' breach should be reduced because of Plaintiff's failure to mitigate." Defendants' arguments are without merit, are properly overruled on all of Plaintiff's claims, and summary judgment was properly entered thereon.

## V.    Untimely Affidavit

¶ 71 Defendants argue Plaintiff failed to timely serve and file its Supportive Affidavit. Defendants contend the North Carolina Rules of Civil Procedure require Plaintiff to serve its Supportive Affidavit at least ten days before the scheduled hearing and Plaintiff had served Defendants on 20 May 2021, four days before the

scheduled hearing on 24 May 2021. Defendants also contend the local rules in Mecklenburg County require Plaintiff to file its Supporting Affidavit no later than two business days before the hearing. Plaintiffs filed on 27 May 2021, seven days after the deadline. Defendants argue they were prejudiced by the untimely service because they were not given proper time to prepare for the hearing.

¶ 72        Plaintiff argues the local Mecklenburg County Rule 12.15(a) permits copies of affidavits to be served on the opposing party "no later than two business days before the hearing date." Meck. Cnty. Loc. R. Civ. P. 12.15(a). Plaintiff contends Defendants were timely served with the Supporting Affidavit under this rule. *Id.* Plaintiff contends there was no issue of material fact without regard to the Supporting Affidavit. The lease and documents and Defendants' defaults and non-payments thereon speak for themselves. Only a question of law was present.

¶ 73        Plaintiff argues Defendants must show on appeal any alleged error in considering the affidavit was prejudicial rather than harmless. An abuse of discretion standard of review requires deferential review to the trial judge's decision. *Scheffer v. Dalton*, 243 N.C. App. 548, 553-54, 777 S.E.2d 534, 539-40 (2015). Defendants' burden is to show prejudicial error, i.e., a different result would have likely ensued had the error not occurred. *Id.*

¶ 74        The trial judge's decision to permit the asserted untimely service and filing of the affidavit was not prejudicial to the Defendants. The evidence presented at trial

showed no issue of material fact existed to deny Plaintiff's claims. Both parties conceded to a breach of the lease and non-payment. Defendants presented no evidence otherwise. Judge Dillon and I also agree on this issue: "Plaintiff's complaint was verified and the allegations contained therein were sufficient to establish Plaintiff's claim, even if Plaintiff's affidavit was not timely, Defendant was not prejudiced by the trial court's consideration of said affidavit." Defendant's arguments are without merit.

## VI.   Fraudulent Inducement Counterclaim

Defendants argue the trial court erred in granting summary judgment because genuine disputes of material facts are generally inherent in fraudulent inducement claims and are evident in this case.

Plaintiff argues summary judgment on Defendants' fraud claim was proper because Defendants failed to properly allege fraud with particularity and proffered nor produced no evidence tending to establish any element of their purported fraud claim.

Summary judgment is granted where the claimants fail to produce evidence of reasonable reliance or of the opposing party's *scienter*. *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 744-748, 600 S.E.2d 492, 498-500 (2004). Defendants have provided no evidence tending to show Plaintiff's *scienter* or that their own reliance thereon was reasonable. The trial court properly granted summary

judgement on Defendants' fraud claim. *Id.*

## VII. Defendants' Proffer

¶ 78 Defendants argue the trial court erred in prohibiting Defendant as an individual from presenting oral testimony in lieu of a written affidavit. Defendants contend Rule 43(e) of the North Carolina Rules of Civil Procedure expressly permits admission of oral testimony during a summary judgment hearing in lieu of or in addition to written affidavits. *See* N.C. Gen. Stat. § 1A-1, Rule 43(e) (2021).

¶ 79 Plaintiff argues the trial court *did not abuse its discretion* by not allowing Defendant individual to testify because Defendants, together or individually, had produced no evidence in discovery or in opposition to the motion for summary judgment and, having failed to do so, could not make their entire case on oral testimony at the hearing and demonstrate prejudice in the trial court's discretionary decision.

¶ 80 Abuse of discretion review requires our Court's deference to the decision-maker and is a difficult burden to overcome. *Scheffer*, 243 N.C. App. at 554, 777 S.E.2d at 540. Defendants cannot demonstrate prohibiting Defendant Obika's individual oral testimony, even if improper, was prejudicial in the face of admitted default. *Id.*

¶ 81 Defendants failed to present any evidence supporting their affirmative defenses and counterclaim, either during discovery and for the more than six months between November 2020, after their counsel was allowed by court order to withdraw

on 3 February, 2021, and the May 2021 hearing or by filing any affidavit prior to the hearing. Defendants have failed to show any abuse in the trial court's decision not to allow or hear oral testimony at the hearing, after Defendants failed to provide discovery or to proffer affidavits in advance of the hearing. *Id.*

## VIII.  Notice

¶ 82        Defendants argue the trial court reversibly erred by entering summary judgment against Defendants' counterclaim without proper notice.  Defendants contend Plaintiff first mentioned its intent to also seek summary judgment against Defendants' counterclaim in its Supporting Affidavit.

¶ 83        On 3 February 2021 the trial court granted Defendants' former counsel's motion to withdraw as counsel of record.  Defendants had received prior notice of their counsel's motion to withdraw.

¶ 84        Plaintiff filed its motion for summary judgment on 29 April 2021.  The plurality opinion finds reversible error in the trial court's admittedly discretionary ruling in not affording notice pursuant to Local Rule 12.1, which requires "good faith consultation" about scheduling before noticing a hearing." Meck. Cnty. Loc. R. 12.1.

¶ 85        Defendants did not seek substituted or replacement counsel in the three months after their counsel had withdrawn and the motion for summary judgment was filed.  Defendants were on notice to seek replacement counsel, if they deemed it prudent. Defendant Obaika is not a licensed attorney and the trial court correctly

ruled he could not represent the LLC at the hearing.

Defendants did not retain replacement counsel after withdrawal of prior counsel or after the motion for summary judgment was filed. The 10-day notice required by Rule 56 can be waived by a party." *Raintree Corp. v. Rowe*, 38 N.C. App. 664, 667, 248 S.E.2d 904, 907 (1978). Defendants failed to seek new counsel after withdrawal or in the face of a dispositive motion. They waived notice cannot show any abuse of discretion by the trial court by their failure to do so and appear *pro se*. Obika, a non-lawyer, cannot represent the LLC in court against Plaintiff's claims or assert any of the LLC's counterclaims. The trial court's order is properly affirmed.

## IX. Conclusion

Our Supreme Court has held that when the parties have only moved for partial summary judgment, it is not an abuse of discretion or reversible error for the trial court to grant summary judgment on all claims, if both parties are given the prior opportunity to submit evidence on all claims pending before the trial court and no genuine issues of material fact exist. *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 212, 258 S.E.2d 444, 448 (1979).

Defendants and Plaintiff were given the opportunity to submit evidence of all the claims brought and pending before the trial court. Defendants had the opportunity to seek replacement counsel for months after prior counsel had withdrawn by court order, but failed to do so. Defendants failed to provide any

evidence to support their claims during discovery through the properly scheduled hearing. Any purported error on the timing of the Plaintiff's Supporting Affidavit was waived.

¶ 89        The issues before the court were questions of law on the applicability of a written lease, guaranty, and contract documents. Defendant LLC's admitted material breaches thereof, and Obaika's unconditional guaranty were not in dispute. Plaintiff's efforts to mitigate Defendants' breaches and damages were not shown to be unreasonable. The trial court's discretionary rulings and the summary judgment entered is not affected by error of law and is properly affirmed. I respectfully dissent.